UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY DOYLE FRITZ,                          :
and RANI FRITZ                             :
    Plaintiff,                         :
                                       :       Civil Action No.
v.                                         :       3:05-cv-869 (JCH)
                                       :
STANDARD INSURANCE                         :       August 25, 2006
COMPANY,                                   :
    Defendant.                         :

**RULING ON MOTION FOR SUMMARY JUDGMENT [Doc. No. 11]**

The plaintiffs, Mary Doyle Fritz and Rani Fritz, bring this civil action against the

defendant Standard Insurance Company ("Standard").  They allege a partial denial of

life insurance benefits under a life insurance policy (the "Policy") issued by Standard to

Quinnipiac University.  The Fritzs are co-equal beneficiaries under the Standard life

insurance policy that Quinnipiac provided to the deceased, Barry R. Fritz, a former

professor and employee of Quinnipiac.  This plan is an employee welfare benefit plan

under the Employment Retirement Income Security Act ("ERISA").  29 U.S.C. §1144(a).

As such, the plaintiff's action for wrongful denial of long term disability benefits is a

claim under section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

Standard brings this Motion for Summary Judgment [Doc. No. 11] pursuant to

Rule 56 of the Federal Rules of Civil Procedure.  For the reasons set forth below, the

motion is GRANTED.

**I.       STANDARD OF REVIEW**

In a motion for summary judgement, the burden is on the moving party to

establish that there are no genuine issues of material fact in dispute and that it is

entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134.  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II.    FACTS[1]

Barry R. Fritz, the deceased, was a full professor of Psychology at Quinnipiac, where he taught for thirty-seven years.  At the time of his death on September 17, 2004, Professor Fritz was the Department of Psychology's Chairperson.  When Professor Fritz passed away, his life was insured by Standard through Quinnipiac. Mary Doyle Fritz is the widow of Professor Fritz, and Rani Fritz is Professor Fritz's

---

[1]For the purposes of the instant motion, the court accepts as true facts undisputed by the parties and resolves disputed facts in favor of the plaintiff where the plaintiff provides evidence to support his allegations.

nephew.  The Fritzs are equal co-beneficiaries under the Standard insurance policy.

During the autumn semester of 2003, his last semester teaching, Professor

Fritz's annual salary was $88, 158.00.  The following spring of 2004, Professor Fritz

began a semester long sabbatical, and Quinnipiac subsequently reduced his annual

earnings to $70, 829.04.  That same spring and into the following summer Professor

Fritz underwent tests at Yale University because of his unhealthy lungs.  Sometime

during the summer of 2004, Professor Fritz opted to have elective surgery to remove a

node from his lungs.  On August 22, 2004, Professor Fritz was admitted at Sloan

Kettering Hospital to have this surgery.  The hospital planned to discharge Professor

Fritz four days after his surgery, but could not because Fritz developed surgery-related

complications.  Tragically, Fritz did not recover from these complications, and he died a

little over three weeks after his operation.

After Professor Fritz's death, the plaintiffs applied to Standard for benefits under

Professor Fritz's life insurance policy.  The Fritzs sought benefits based on a salary of

$97, 743.00, the amount Professor Fritz was set to earn for the up-coming academic

year.  The Fritzs derived this number, at least in part, from a letter written to Professor

Fritz by Kathleen McCourt, Quinnipiac's Senior Vice President for Academic Affairs.

See  Letter from McCourt to Dr. Fritz, April 14, 2004; Def. Exh. A at 252.  That letter

further stated that Professor Fritz would be reappointed as a tenured full Professor of

Psychology for the period of August 23, 2004 through June 10, 2005.[2]  Id.  Standard,

_____

[2]Though ultimately not essential to this court's determination, the letter from McCourt is, at
best, ambiguous as to when Quinnipiac would begin paying Professor Fritz at the increased salary
rate.  In addition to the language cited above referencing the August 23, 2004 through June 10,
2005 pay period, there is a notation at the bottom of the letter indicating that Professor Fritz would

however, paid the Fritzs benefits based on a salary of $70, 829.04, the amount

Professor Fritz made while he was on sabbatical.  According to Standard, the company

arrived at this figure from data provided by Quinnipiac, which reported Professor Fritz's

bi-weekly gross earnings during the week of June 4, 2004 as $2, 951.21.  Quinnipiac

Detail Paycheck History Report, Jan. 1, 2004 - Oct. 31, 2004; Def. Exh. A at 118.  As

the court will explain later in this opinion, Standard relied on Professor Fritz's salary as

of June 4, 2004 because this was the date Fritz last reported for work according to

information from Quinnipiac provided in a life insurance claim form.  See Proof of Death

Claim Form (Oct. 7, 2004); Def. Exh. A at 101.  The claim form also noted that Fritz's

sabbatical salary of $70, 829.00 per year was set to increase to $97, 743.00 on

September 1, 2004.  Id.  Having settled on this methodology, Standard then multiplied

Fritz's $2, 951.21 semi-monthly salary by the twenty-four pay periods in a calendar year

to yield $70, 829.04.

Under Standard's life insurance plan, one calculates the total benefit owed by

doubling the insured's annual earnings, rounded to the next higher multiple of

$1, 000.00.  Thus, the Fritzs' desired calculation of their benefits amounted to two times

$98, 000, or $196, 000.00.  Standard's actual calculation of the Fritzs' benefit, by

contrast, amounted to two times $71, 000, or $142, 000.00.  Simple subtraction reveals

that the difference between the Fritzs' desired benefit and the benefit Standard actually

paid to them ($196, 000.00 - $142, 000.00) equals $54, 000.00.

---

receive twenty-four semi-monthly paychecks for the period of September 15, 2004 through August
31, 2005.  Letter from McCourt to Fritz; Def. Exh. A at 252.  Given that Quinnipiac was to pay Fritz
every fifteen to sixteen days, the later date range suggests that Fritz's pay increase did actually
take effect on September 1, 2004.

In an attempt to correct what they believed to be an erroneous benefit calculation, the Fritzs requested an appeal from Sue Colletto, a Life Benefits Analyst at Standard.  Letter from Laurence P. Nadel to Colletto, Jan. 25, 2005.  While not abandoning their claim that Standard should have calculated their life insurance benefits based on a $97, 743.00 salary, they proposed that an alternative manner in which to calculate benefits would be to rely on Professor Fritz's annual salary in the autumn of 2003.  Id.  This would have placed Professor Fritz's yearly earnings at $88, 158.00.  Id.

Standard's rejection of the Fritz's appeal came via letter on March 29, 2005.  Letter from Molly Brady to Nadel, March 29, 2005.  Molly Brady, a Life Benefits supervisor with Standard who handled the Fritzs' appeal, stated in her letter to the Fritzs that Standard made no error in calculating their benefits.  Id.  The terms of the policy, according to Brady, set annual earnings based on the insured's "rate of earnings in effect on the Member's last day of active work."  Id.  In Standard's view, Professor Fritz's $97, 829.00 could not be used to calculate benefits because Professor Fritz was not actively working, nor capable of actively working,[3] on September 1, 2004, the salary's effective date according to the life insurance claim form.[4]  Id.

---

[3]The Standard life insurance policy defines "active work" and "actively at work" as "performing the material duties of your own occupation at your Employer's usual place of business." Standard Life Insurance Policy at 10; Def. Exh. A. at 196.  The form also informs employees that they can meet this requirement if they satisfy the following criteria: "1) You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation; 2) You were Actively at Work on your last scheduled work day before the date of your absence; and 3) You were capable of Active Work on the day before the scheduled effective date of your insurance or increase in your insurance."  Id.

[4]With regard to when a member is entitled to an increase coverage based on a higher salary, the Standard life insurance policy states as follows: "If you are incapable of Active Work

Another aspect of the Standard Life Insurance Policy warrants mention.  Under

the section entitled "Allocation of Authority," the Plan includes the following language:

> Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy. Our authority includes, but is not limited to:
>
> > 1. The right to resolve all matters when a review has been requested;
> > 2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
> > 3. The right to determine:
> >
> > > a. Your eligibility for insurance;
> > > b. Your entitlement to benefits;
> > > c. The amount of benefits payable to you;
> > > d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.
>
> Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

Id. at D 10017.

## III.    DISCUSSION

Standard argues in support of its Motion for Summary Judgment that its denial of

disability benefits to the plaintiff under the Policy was not arbitrary and capricious.  The

Fritzs, without citing to any legal authority, allege that several genuine issues of material

fact exist to preclude summary judgment.  To wit, they assert that the Policy did not

require Professor Fritz to be engaged in active work for his elevated insurance benefits

---

because of Sickness, Injury, or Pregnancy on the day before the scheduled effective date of your insurance or an increase in your insurance, your insurance or increase in insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member." Standard Life Insurance Policy, Def. Exh. A at 10.

to become effective; that, even if the Policy did require Professor Fritz to be engaged in active work, he successfully met this requirement; and that Standard's calculation of Professor Fritz's earnings was arbitrary, capricious, and incorrect. After examining the admissible evidence put forth by both parties, the court concludes that the Fritzs have failed to create a genuine issue of material fact as to whether Standard's review of the their claim was arbitrary and capricious.

As a starting point, the court notes that there is no dispute that the Policy is an "employee welfare benefit plan" as defined by ERISA. See 29 U.S.C. § 1002(1).[5] To determine what standard to apply to the Fritzs' challenge of their partial denial of benefits, the court must determine, however, whether the Policy confers discretionary authority on the Policy's Administrator. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "When an employee benefit plan grants a plan fiduciary discretionary

---

[5] 29 U.S.C. § 1002(1) provides:

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

authority to construe the terms of the plan, [t]he court may reverse only if the fiduciary's decision was arbitrary and capricious." Rombach v. Nestle USA, Inc., 211 F.3d 190, 194 (2d Cir. 2000) (quoting Miller v. United Welfare Fund, 72 F.3d 1066, 1070 (2d Cir. 1995)) (internal quotation marks omitted).  More specifically, "[w]here the plan reserves such discretionary authority, denials are subject to the more deferential arbitrary and capricious standard, and may be overturned only if the decision is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 249 (2d Cir. 1999) (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)).

"The plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies, since 'the party claiming deferential review should prove the predicate that justifies it.'"  Id. (quoting Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)).  To determine whether an ERISA plan confers discretionary authority on the plan administrator, courts look to the language of the policy, as the Second Circuit has discussed:

> In our Circuit, we have recognized that magic words such as discretion and deference may not be absolutely necessary to avoid a [de novo] standard of review.  At the same time, we have noted that the use of such words is certainly helpful in deciding the issue.  When we have deemed the arbitrary and capricious standard applicable, the policy language reserving discretion has been clear.

Id. at 251 (citations and internal quotation marks omitted).

Based on the undisputed facts, the court concludes that Standard has carried its burden of proving that the Policy at issue in this case reserves discretion to the Policy's administrator to determine eligibility for benefits.  Here, the language of the Fritz's policy

8

is explicitly clear: Standard reserves to itself "full and exclusive authority . . . to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy," and Standard reserves to itself "[t]he right to determine: a. Your eligibility for insurance; b. Your entitlement to benefits; c. The amount of benefits payable to you; d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c., above."  Based on Second Circuit precedent, this language is sufficient, albeit without using the word "discretion" or "discretionary," to trigger the application of the arbitrary and capricious standard.  See, e.g., Rombach, 211 F.3d at 194; Jiras v. Pension Plan of Make-Up Artist & Hairstylists Local 798 of the Alliance of Theatrical Stage Employees, 170 F.3d 162, 166 (2d Cir. 1999); Pagan, 52 F.3d at 441-42.  Moreover, several courts outside of this Circuit have found identical language in one of Standard's ERISA plans to be sufficient to confer discretion on the plan administrator.  See, e.g., Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999); Stills v. GMBC Healthcare, Inc., 48 F. Supp. 2d 495, 498 (D. Md. 1999).

The court must therefore decide whether Standard's denial of benefits to the Fritzs was without reason, unsupported by substantial evidence, or erroneous as a matter of law.  Kinstler, 181 F.3d at 249.  Under this deferential standard, the court is "not free to substitute [its] own judgment for that of the [Plan's administrator] as if [it] were considering the issue of eligibility anew."  Pagan, 52 F.3d at 442.  Thus, "[t]he court may not upset a reasonable interpretation by the administrator."  Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst., 46 F.3d 1264, 1271 (2d Cir. 1995).  Furthermore, "a district court's review under the arbitrary and capricious standard is

9

limited to the administrative record." Miller, 72 F.3d at 1071.

In this context, substantial evidence "'is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance.'" Id. at 1072 (quoting Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992)).  The Second Circuit has further explained that, "[w]here both the plan administrator and a spurned claimant 'offer rational, though conflicting, interpretations of plan provisions, the [administrator's] interpretation must be allowed to control.'" Pulver v. First Unum Life Ins. Co., 210 F.3d 89, 92-93 (2d Cir. 2000) (quoting O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109, 112 (2d Cir. 1995)).  "However, '[w]here the trustees of a plan impose a standard not required by the plan's provisions, or interpret the plan in a manner inconsistent with its plain words, or by their interpretation render some provisions of the plan superfluous, their actions may well be found to be arbitrary and capricious.'" O'Shea, 55 F.3d at 112 (quoting Miles v. N.Y. State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 599 (2d Cir. 1983)).

As referenced above, the Fritzs' first argument to defeat summary judgment is that the Standard Policy did not require Professor Fritz to be actively working when his raised salary took effect in order to be eligible for a subsequent increase in insurance benefits.  This claim is based on the fact that, when Brady denied the Fritzs' appeal, she stated that Standard's Group Policy became effective on July 1, 2004.  Brady letter to Nadel, March 29, 2005; Def. Exh. A at 264.  Brady went on to explain that Professor Fritz last reported to work on or after July 1, 2004, according to life insurance claim

10

form.  Id. Thus, an investigation was necessary into whether Professor Fritz worked on

or after July 1, 2004 to determine if Fritz was eligible to receive coverage under the new

group plan.  Id.  Brady concluded that, because Professor Fritz had worked in August in

preparation for upcoming classes, he was in fact eligible for coverage under the new

group policy.  Id.

In response to Brady's analysis, the Fritzs take the position that Professor Fritz

never had to engage in active work in order for the July 1 policy to take effect.  They

argue that Professor Fritz had a "Prior Plan"[6] of life insurance when the new policy

became active.  Because of Standard's policy concerning continuity of coverage from a

prior group policy to a new group policy, Professor Fritz did not have to be actively

employed for his coverage to transfer to the July 1 policy.[7]  Thus, given that Professor

Fritz was exempt from the Active Work requirements of the Policy, Standard acted

arbitrarily and capriciously in not paying life insurance benefits based on Professor

Fritz's new salary.

According to Standard, the Fritzs' argument amounts to a pure non sequitur,

since the provisions that they cite governing continuity of coverage have no bearing on

whether the insured is eligible for an increase in coverage.  Standard correctly notes

that the regulations in the Policy dealing with an insured's eligibility to become covered

---

[6]The Standard Policy defines a "prior plan" as "your Employer's group life insurance plan in effect on the day before the effective date of your Employer's coverage under the Group Policy and which is replaced by the Group Policy."  Standard Life Insurance Policy at 24.  Def. Exh. A. at 182.

[7]The Standard Policy states that insured may waive the active work requirement "if [the member] were insured under the Prior Plan on the day before the effective date of [the member's] coverage under the Group Policy, [the member] can become insured on the effective date of your Employer's coverage without meeting the Active Work requirements."  Id. at 10.

by a successor insurance plan are silent on the insured's eligibility for an increase in

insurance coverage.  See Standard Life Insurance Policy at 10, id. at 196.  Instead,

they assert that the Active Work requirement is the only section in the Policy that

addresses an insured's ability to receive an increase in benefits.  Under this provision,

Professor Fritz, though certainly *covered* by the successor insurance policy, could not

obtain an *increase* in benefits based on his new salary because he did not work, and

was incapable of working, when his new salary initiated on September 1, 2004.  See id.

Without ruling on the ultimate correctness of Standard's or the Fritzs'

interpretation of the Policy's active work requirement, this court concludes that

Standard's interpretation is more than reasonable.  As such, the court also finds that

the Fritzs have failed to create a genuine issue of material fact on this point.

The Fritzs' next contention is that, whatever the Policy requires, Professor Fritz

was actually capable of active work on the day before the scheduled increase was to

take effect.  Therefore, Professor Fritz should have received benefits based on a salary

of $97, 743.00.  This argument proceeds in two phases.  First, the Fritzs' cite Professor

Fritz's letter from McCourt to argue that Fritz's salary increase became effective on

August 23, 2004, rather than September 1, 2004, as Standard maintains.  See Letter

from McCourt to Fritz, April 14, 2004; Def. Exh. A at 252.  Next, relying in part on an

affidavit attached to their Opposition from Mrs. Fritz , the Fritzs' argue that Professor

Fritz was perfectly capable of work on August 22, 2004, despite the fact that this was

the date on which Fritz was admitted for surgery.  See Aff. of Mary Doyle Fritz at ¶ 15

(March 10, 2006) (Attachment No. 1 to Doc. No. 18).  According to Mrs. Fritz, on August

22, 2004 Professor Fritz "thought about and spoke about his course, his students,

12

prepared for the upcoming semester, and had conversations with the Psychology

Department Chairman of Quinnipiac about how his course should be taught during his

absence." Id.  In addition, Professor Fritz brought his laptop to the hospital.  Id.

As to the Fritz's first argument that Fritz's salary actually became effective on

August 23, 2004, this court concludes that McCourt's letter is insufficient to establish

that Standard's determination of September 1, 2004 as the effective date is

unreasonable.  The record is clear that Quinnipiac reported September 1, 2004 as the

date of Professor Fritz's last salary increase.  See Proof of Death Claim Form, Def.

Exh. A at 101.  Indeed, when Brady became aware of the conflict in dates between the

insurance claim form and McCourt's letter, she verified the September 1 date with Anna

Spragg, the Benefit Administrator at Quinnipiac who filled out the insurance claim form.

See Notes by Brady, March 15, 2005; id. at 262.  Given these facts, the court cannot

conclude that Standard's selection of September 1, 2004 was arbitrary or capricious.

Moving to whether Professor Fritz was capable of working on August 22, 2004,

the court also concludes that the Fritzs' fail to create a genuine issue of material fact.

As a preliminary matter, Mrs. Fritz's affidavit cannot be considered in the court's

decision because this information was not in Standard's administrative file when it

determined the Fritzs' benefits.  See Miller v. Union Welfare Fund, 72 F.3d 1066, 1071

(2d Cir. 1995) ("[A] district court's review under the arbitrary and capricious standard is

limited to the administrative record."); Dunn v. Standard Insurance Co., 156 F.2d 227,

231 n. 2 (D.Conn. 2001) (same).  The Fritzs, then, are left with their assertions that

Professor Fritz was only in the hospital for elective surgery, rather than emergency

care, and that individuals such as Governor Pataki of New York are widely reported as

having worked while hospitalized.  Despite these assertions, the fact remains that the

Fritzs can point to nothing in the administrative record which attests to Professor Fritz's

ability to work on August 22, 2004.  This court cannot conclude that Standard was

unreasonable in refusing to assume that Fritz was capable of working the day before

his surgery on August 23, 2004.

Lastly, the Fritzs attempt to establish that Standard's calculation of Professor

Fritz's earnings was itself arbitrary, capricious, and incorrect.  To this end, the Fritzs

note that Standard could have elected to base Professor Fritz's benefits on a salary of

$97, 743.00, the amount payable to Fritz after he resumed his duties as a full professor;

$88, 158.00, the amount Quinnipiac paid to Fritz when he most recently taught at the

university; or $70, 829.00, the amount Quinnipiac paid to Fritz during his sabbatical.

The Fritzs reference the fact that Brady, in rejecting their appeal, acknowledged that

"the education industry presents a unique challenge in determining active work status

when a person stops work during the summer break."  Letter from Brady to Nadel; Def.

Exh. A at 263.  Based on these alleged ambiguities, the Fritzs contend that Standard's

selection of the lowest possible level of insurance benefits was arbitrary and capricious.

Putting aside the Fritz's indignation with Standard's supposed penny-pinching,

see Pl. Opposition at 9 (stating that "[i]t should not be surprising that [Standard] chose

the smallest amount."), what they assert is nothing more than a disagreement with

Standard's calculations.  This court has already addressed the basis for Standard's

calculation of benefits at a salary of $70, 829.00.  See p. 4, supra.  Nothing urged by

the Fritzs on this point calls into question the court's conclusion that Standard had a

substantial basis for the determination of its award amount.  The Fritzs have failed to

create a genuine issue of material fact on this issue, and Standard is entitled to

summary judgment as a matter of law.


**IV.     CONCLUSION**

For the reasons stated above, Standard's Motion for Summary Judgment [Doc.

No. 11] is GRANTED.  The Clerk is hereby directed to close the case.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 25th day of August, 2006.


                              /s/ Janet C. Hall
                              Janet C. Hall
                              United States District Judge